The STATE of Ohio, Appellee,

v.

HOOP, Appellant.

[Cite as *State v. Hoop* (1999), 134 Ohio App.3d 627.]

Court of Appeals of Ohio,
Twelfth District, Brown County.

No. CA98–04–017.

Decided Aug. 2, 1999.

628

630

*Thomas F. Grennan,* Brown County Prosecuting Attorney, and *Tresa Gossett,* Assistant Prosecuting Attorney, for appellee.

*Elizabeth E. Agar,* for appellant.

WILLIAM W. YOUNG, Presiding Judge.

Defendant-appellant, Joy Majors Hoop, appeals her conviction in the Brown County Court of Common Pleas for conspiracy to commit and complicity in the commission of the aggravated murder of her husband, Donald Ray Hoop. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

At approximately 1:30 a.m. on February 10, 1997, Deputy Buddy Moore of the Brown County Sheriff's Office noticed a suspicious-looking truck leaving Slammers Bar in Mt. Orab, Brown County, Ohio. He observed the truck turn into the driveway of a residence across the street from Slammers.

Moments later, the Brown County 911 dispatcher received a telephone report of a shooting in the Slammers parking lot, and Moore was dispatched to the scene. When he arrived, Moore found appellant, the owner of Slammers, kneeling over Donald's body and crying. Moore called for assistance, returned to the body, and determined that there was no pulse.

Trooper Walden of the Ohio State Patrol arrived, and Moore requested that Walden go to the residence where the truck observed earlier had parked. Walden found that the truck was still present at the residence. Walden and Moore knocked on the front door, and Kathy Kerr, the homeowner, answered. When asked if the man who had driven the truck was in the house, Kerr stated that he was in the bathroom.

The officers were led to the bathroom, where Carl G. Lindsey was discovered washing himself. Lindsey's clothes were soaking in bloody water in the bathtub. On the vanity was a pocketknife and a box of ammunition. Moore arrested Lindsey, and Lindsey's clothes were seized, as was Donald's wallet, which was found in the bathroom garbage can and contained over $1,000. The officers also seized the pocketknife and ammunition. A Jennings .22 caliber automatic pistol was found behind the bathroom door.

Appellant was taken to the sheriff's office for questioning. Appellant gave a statement to Lt. Forest Coburn admitting that earlier that evening she, Kerr, Lindsey, and Kenneth Swinford had talked about killing Donald. Appellant maintained that the conversation was only a joke, and that she had not intended for Donald to be harmed.

On May 29, 1997, appellant was indicted on four counts alleging her participation in aggravated murder, with death penalty specifications. Count One charged that appellant had conspired with Lindsey to commit aggravated murder, a violation of R.C. 2923.01(A). Counts Two through Four charged three different theories of complicity to aggravated murder. Count Two charged that appellant had solicited Lindsey to commit aggravated murder, a violation of R.C. 2923.03(A)(1). Count Three charged that appellant had conspired in the completed crime of aggravated murder, a violation of R.C. 2923.03(A)(3). Count Four charged that appellant had aided and abetted Lindsey in committing aggravated murder, a violation of R.C. 2923.03(A)(2).

All four counts of the indictment included the same two death penalty specifications. Specification One charged that the aggravated murder was a murder for hire, pursuant to R.C. 2929.04(A)(2). Specification Two charged that the aggravated murder was done during the commission of or in flight from the commission of an aggravated robbery, and that appellant was the principal offender or that the aggravated murder was committed with prior calculation and design, pursuant to R.C. 2929.04(A)(7).

On June 12, 1997, appellant filed a pretrial motion to require the state to consolidate or elect between counts of the indictment. Appellant argued that the four counts of the indictment stated the same offense, and that the indictment was meant to inflame the jury by repeating the aggravating circumstances of the crime. The trial court denied the motion, ruling that the indictment was not flawed. The indictment was found to present different theories of the killing, thus charging four different offenses.

Appellant also filed a motion to require the state to choose between the alternative allegations in Specification Two. The trial court granted this motion. The state chose to proceed on the alternative that the aggravated murder was committed during the commission of or in flight from the commission of an

aggravated robbery and with prior calculation and design. The part of the specification alleging that appellant was the principal offender was dismissed.

On January 5, 1998, appellant filed a motion for disclosure of exculpatory information by Lindsey's counsel and subpoenaed Lawrence C. Handorf, the investigator appointed on Lindsey's behalf. Appellant sought information that at least one witness had evidence that could exculpate appellant and impeach the testimony of Kerr. Kerr had stated that appellant had given Lindsey the murder weapon.

Lindsey filed a motion to quash the subpoena and an accompanying memorandum in opposition that contended that the information sought was protected by attorney-client privilege and the work product doctrine. Lindsey's attorney filed an affidavit stating that any such information which may have been communicated by Lindsey was protected by the attorney-client privilege. At this time, Lindsey had already been tried and convicted for the aggravated murder, having received a death sentence. An appeal of his conviction and sentence was pending. See *State v. Lindsey* (2000), 87 Ohio St.3d 479, 721 N.E.2d 995.

On January 26, 1998, the trial court held a hearing on appellant's motion to compel production of the subpoenaed information. Appellant's counsel told the trial court that he had earlier asked Handorf if he had spoken with a witness claiming to have given Lindsey the murder weapon before the night of the murder, but that Handorf had refused to answer. Appellant called Handorf to testify and asked him whether he had spoken to the alleged witness. Lindsey's counsel objected, asserting that the information was privileged. He argued that if any such information did exist, it was derived from privileged conversations with Lindsey and that Lindsey had not waived the privilege. After a lengthy discussion between the trial court, counsel, and the prosecutor, appellant's counsel requested that the trial court either order Handorf to answer the question or hold an *in camera* hearing to determine whether such information was privileged. The trial court refused, but took the arguments under consideration.

On February 4, 1998, the trial court filed a decision denying appellant's motion. The trial court found that the attorney-client privilege and the work product doctrine were applicable, and that to compel disclosure of this information would breach these protections. The trial court found that any information concerning the witness may have come from conversations between Lindsey and his counsel, and that Lindsey had not waived the privilege. The trial court determined that the attorney-client privilege and the work product doctrine "must be preserved inviolate if our system of justice is to endure."

The trial court also found it important that the information sought could further incriminate Lindsey. The trial court found that Lindsey's right against

self-incrimination might be compromised because the trial court believed that any disclosure could be used against Lindsey in the future. The trial court stated in its order that it was not permitted to hold even an *in camera* hearing to preserve the issue.

The guilt phase of appellant's trial commenced on February 17, 1998. The state presented Kerr, Swinford, and A.J. Cox, a Slammers patron, as witnesses, all of whom testified about the conversation about killing Donald. On cross-examination, all three admitted that, at the time of the conversation, they believed that appellant was not serious about having Donald killed. These witnesses also admitted, though, that they were now unsure about this belief. Kerr testified that appellant had given Lindsey the murder weapon just before the killing. The state also called the investigating police officers, who explained the details of their investigations and findings, as well as several forensic experts who established the physical details of the crime.

At the close of the state's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court denied this motion.

In her defense, appellant called a number of witnesses. Some were called to impeach the credibility of Kerr, the only witness to expressly state that the murder weapon was in appellant's possession. Appellant presented other witnesses to establish that Lindsey was violent, had been seen with a pistol prior to the killing, and had his own motives for killing Donald. Appellant sought to show that Lindsey committed the aggravated murder on his own, and that appellant did not take part in the killing.

At the close of appellant's case-in-chief, appellant renewed her motion for a judgment of acquittal. Again, the trial court denied the motion.

On February 24, 1998, the jury returned its verdict, finding appellant guilty on Counts One, Two, and Three. The jury also found appellant guilty of Specification Two included in the three counts. The jury found appellant not guilty on Count Four as well as Specification One under each count of the indictment.

On March 11, 1998, appellant filed a motion for new trial, pursuant to Crim.R. 33. Appellant argued that there was not sufficient evidence to support the guilty verdicts and that the trial court's refusal to order disclosure of exculpatory information by Lindsey's counsel had unfairly prejudiced her. The trial court held a hearing on the motion, at which appellant's counsel argued that there was sufficient reason to hold an *in camera* hearing concerning whether the sought-after information was privileged. Counsel told the trial court that on March 10, 1998, he had spoken with Handorf, who had stated that the witness sought by appellant did exist. The trial court denied appellant's motion, resting on its

earlier decision. On March 12, 1998, the trial court's judgment entry on the jury verdict was filed.

The sentencing phase of appellant's trial began on March 13, 1998. The jury recommended that appellant receive a sentence of life imprisonment with parole eligibility after twenty-five years. A sentencing hearing took place on March 26, 1998. On April 6, 1998, the trial court filed its opinion pursuant to R.C. 2929.03(F), finding that the aggravating circumstances of the crime did not outweigh the mitigating factors by proof beyond a reasonable doubt.

On April 21, 1998, the trial court filed its judgment entry sentencing appellant. The trial court found that Counts One and Three charged allied offenses of similar import, and that the state had elected to proceed on Count Three. The trial court also found that Counts Two and Three merged for purposes of sentencing. The trial court ordered that appellant serve one term of life imprisonment with parole eligibility after twenty-five years.

Appellant appeals, raising four assignments of error. We will address these assignments of error out of order for purposes of clarity.

Assignment of Error No. 2:

"The trial court erred to defendant's prejudice by denying her motions to either consolidate or require the state to elect between counts of the indictment."

In her first assignment of error, appellant contends that the trial court erred by refusing to order the state to elect between or consolidate counts in the indictment. Appellant argues that the indictment was multiplicitous, setting forth the same crime four times, so as to confuse and inflame the jury.

Although we note that the indictment in the present case could perhaps have been more clearly written, we find that the indictment was not defective and that it did not prejudice appellant's rights. The indictment contained three counts of complicity to commit aggravated murder in violation of R.C. 2923.03(A). R.C. 2923.03(A) describes three different ways a person can be charged with complicity. Count Two of the indictment charged appellant with solicitation, a violation of R.C. 2923.03(A)(1), Count Three charged appellant with conspiracy, a violation of R.C. 2923.03(A)(3), and Count Four charged appellant with aiding and abetting, a violation of R.C. 2923.03(A)(2). Thus, the indictment charged appellant under three theories of complicity, each of which was a violation of a different section of the statute.

As noted in *State v. Washington* (Jan. 10, 1997), Lake App. No. 95–L–128, unreported, 1997 WL 1843865, there is some question whether the crimes of solicitation, aiding and abetting, and conspiracy, which were distinct offenses at common law, have been modified by statute. Nonetheless, an indictment may

present all three theories of complicity within a single count of an indictment. *Id.* More important, the court in *Washington* found that if an indictment is duplicitous, alleging all three theories of complicity in one count, the trial court is empowered to sever the individual allegations into separate counts. *Id.* After such a severance, an indictment would be identical to the indictment presented against appellant.

We agree with the result reached by the court in *Washington.* R.C. 2941.04 states:

"An indictment or information may charge two or more different offenses connected together in their commission, *or different statements of the same offense,* or two or more different offenses of the same class of crimes or offenses, under separate counts * * *.

"The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any number of the offenses charged, and each offense upon which the defendant is convicted must be stated in the verdict." (Emphasis added.)

Crim.R. 8(A) discusses joinder of offenses in an indictment:

"Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

The trial court did not abuse its discretion in denying appellant's motion to compel the state to elect between the complicity counts. R.C. 2941.04 and Crim.R. 8(A) explicitly permit a prosecutor to join two or more counts in an indictment which contain the same offense (complicity), but which are stated differently [R.C. 2923.03(A)(1), (2), and (3)]. See *State v. Lunce* (Feb. 12, 1993), Marion App. No. 9–92–51, unreported, 1993 WL 44608.

█ We also find that the trial court did not err in refusing to compel the state to elect between the conspiracy charge in Count One and the complicity charge in Count Three. R.C. 2941.25(A) provides that a defendant may be found guilty on all counts of a multiple-count indictment where the counts involve allied offenses of similar import, but the defendant may be sentenced and convicted on only one of those counts. Two offenses are allied offenses of similar import when the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, and when the defendant's conduct demonstrates that there was not a separate animus for each crime. R.C. 2941.25; *State v. Rance* (1999), 85 Ohio St.3d 632, 639, 710 N.E.2d 699, 705.

When one conspires with another to commit an offense in violation of R.C. 2923.01, one is also guilty of complicity under R.C. 2923.03(A)(3). *State v. Keenan* (1998), 81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946. Because these offenses are allied offenses of similar import, the state was not required to elect which charge would be submitted to the jury. Instead, appellant could be convicted on only one count, as was determined by the trial court. See *State v. Weind* (1977), 50 Ohio St.2d 224, 236, 4 O.O.3d 413, 420, 364 N.E.2d 224, 233.

We find that the trial court did not err in denying appellant's motion to compel the state to consolidate or elect between counts of the indictment. Accordingly, appellant's second assignment of error is overruled.

Assignment of Error No. 3:

"The trial court erred to defendant's prejudice in permitting the state to introduce photographic evidence which had no evidentiary relevance, and which carried a high risk of unfair prejudice or confusion of the jury."

In her third assignment of error, appellant contends that the trial court erred by allowing the introduction of photographs of purported blood spots discovered at the crime scene. Appellant argues that the substance in the photos was not identified as blood and that the photographs were not probative of any issue in the case.

The admission of photographs into evidence is left to the sound discretion of the trial court. *State v. Jackson* (1991), 57 Ohio St.3d 29, 37–38, 565 N.E.2d 549, 559. Photographs are admissible if they are properly identified, are relevant and competent evidence, and are accurate representations of the scene that they purport to portray. *State v. McFadden* (1982), 7 Ohio App.3d 215, 217, 7 OBR 277, 278, 455 N.E.2d 1, 2–3. A photograph is admissible where its probative value outweighs the danger of prejudice to the defendant and where its evidentiary value is not repetitive or cumulative in nature. Evid.R. 403.

Moore and Coburn testified about the photographs at issue. They testified that the photographs were accurate representations of the crime scene as it was found. The photographs were taken because the substance found appeared to be blood. Appellant is correct that the state failed to test this substance to establish what it was or where it came from. The state performed tests on similar substances found on Lindsey's person, clothes, and truck, on Donald's truck, on appellant's person, and throughout the crime scene. The state was not required to test every spot of blood discovered.

The state laid a proper foundation as to the accuracy of the photographs. The photographs were relevant as they conveyed the condition of the crime scene and the possible blood trail associated with the crime. That the state failed to test

the contested spots of blood went to the probative value of the photographs, not their admissibility. Appellant cross-examined the state's witnesses concerning the photographs, demonstrating that the blood may not have been due to the murder. It was for the jury to decide what weight to give the photographs. Accordingly, appellant's third assignment of error is overruled.

Assignment of Error No. 1:

"The trial court erred to defendant's prejudice in denying her motion for production of exculpatory evidence, and in ruling that the information sought was privileged and could not be compelled."

In her first assignment of error, appellant contends that the trial court erred by overruling her motion to compel the production of possibly exculpatory information from Handorf, the investigator working on Lindsey's behalf. Appellant asserts that the trial court's denial of her motion substantially prejudiced her rights to a fair trial.

At the outset, we note that this case presents unusual circumstances, and our decision is limited to the specific facts of the instant case. After a thorough review of the record and extensive research, we are compelled to find that the trial court erred in ruling that it could not hold an *in camera* hearing to review the claimed privileged material when determining whether appellant should have been granted a new trial. We vacate only the trial court's entry overruling appellant's motion for new trial, and remand the case for a new hearing on appellant's motion for a new trial, consistent with the following instructions.

We first address the trial court's concern that any possible disclosure of the information that appellant seeks would violate Lindsey's Fifth Amendment right against self-incrimination. The Fifth Amendment protects individuals against compelled self-incrimination. It is a personal right that protects only the party subpoenaed to give testimonial evidence. *United States v. Nobles* (1975), 422 U.S. 225, 233, 95 S.Ct. 2160, 2167, 45 L.Ed.2d 141, 150; *Couch v. United States* (1973), 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548, 553. The right against self-incrimination is applicable when testimony is compelled from the person claiming to be incriminated by disclosure. *Fisher v. United States* (1976), 425 U.S. 391, 398, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39, 48–49. In a case such as this one, where an attorney or the attorney's agent is being subpoenaed, only the attorney-client privilege and the work product doctrine may be invoked to protect the client. *In re Special September 1978 Grand Jury* (C.A.7, 1980), 640 F.2d 49, 64.

In the instant case, appellant is not seeking an inculpatory communication by Lindsey. Appellant asked Handorf if he had spoken to the sought-after witness and what this witness had told him. Appellant did not seek to know how Handorf

became aware of this witness, which could have been by a communication from Lindsey. There is no compulsion of testimonial communications by Lindsey, because neither he nor his counsel are being forced to disclose the substance of any conversations. Therefore, the only issue to concern the trial court is the assertion by Lindsey that the information sought by appellant is protected by the attorney-client privilege and/or work product doctrine.

 Whether to hold an *in camera* hearing on evidentiary issues is left to the trial court's discretion, see *United States v. Zolin* (1989), 491 U.S. 554, 572, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469, 490–491, but when inquiring into issues of privilege, it is best that the trial court hold an *in camera* hearing to review the allegedly privileged material. *State v. Geis* (1981), 2 Ohio App.3d 258, 260 and 264, 2 OBR 286, 288–289 and 292–293, 441 N.E.2d 803, 807 and 810. By doing so, the trial court may determine whether the information sought is privileged without the information being disclosed to other parties or terminating the privilege. *Zolin*, 491 U.S. at 568, 109 S.Ct. at 2629, 105 L.Ed.2d at 488. An *in camera* inspection not only allows the trial court to determine. whether the material is privileged, the inspection serves two important evidentiary purposes:

"First, it allows the trial court to make an informed decision as to the evidentiary nature of the material in question rather than depending on the representations of counsel. Secondly, the *in camera* inspection allows the trial court to discern that aspect of the evidence, which has evidentiary value from that which does not, as well as to allow the trial court to restrict the availability of that evidence, which has limited evidentiary value." *Geis*, 2 Ohio App.3d at 260, 2 OBR at 289, 441 N.E.2d at 807.

 A party is not entitled, as a matter of right, to an *in camera* hearing when privilege is asserted. Before engaging in an *in camera* review to determine whether privilege is applicable, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person" that *in camera* review of the materials may reveal evidence establishing an applicable privilege or that the privilege is outweighed by other rights. *Zolin*, 491 U.S. at 572, 109 S.Ct. at 2631, 105 L.Ed.2d at 490. See, also, *United States v. Rainone* (C.A.7, 1994), 32 F.3d 1203, 1206, and *United States v. Romano* (1997), 46 M.J. 269, 274.

 Although the attorney-client privilege and the work product doctrine may be employed to protect identical matters, the doctrines are fundamentally different in both policy and practice. The attorney-client privilege bestows upon the client the power to refuse to disclose, and to prevent others from disclosing, confidential communications made between the attorney and client in the course of seeking or rendering legal advice. *State ex rel. Thomas v. Ohio State Univ.*

(1994), 71 Ohio St.3d 245, 249, 643 N.E.2d 126, 130; *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 329, 612 N.E.2d 442, 446. The only material protected by the attorney-client privilege are those involving communications between attorney and client. *Id.* Conversations between the attorney and a third party, as well as the underlying facts of a case, are not privileged. *Upjohn Co. v. United States* (1981), 449 U.S. 383, 395–396 and 399, 101 S.Ct. 677, 685–686 and 687, 66 L.Ed.2d 584, 594–595 and 597; *Hickman v. Taylor* (1947), 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451, 461. As noted in *Upjohn Co.*:

"The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 395–396, 101 S.Ct. at 685–686, 66 L.Ed.2d at 594–595.

■ The identity of a witness is not protected by the attorney-client privilege because witness identity does not belong to a particular party.

■ Unlike the attorney-client privilege, which is limited to communications between attorney and client, the work product doctrine protects all materials prepared in anticipation of trial. *Id.* at 397–398, 101 S.Ct. at 686–687, 66 L.Ed.2d at 596–597. Work product, at its core, protects the mental thoughts and processes of the attorney. Any notes, documents, or memoranda prepared by the attorney or his representatives in preparation of litigation are protected from disclosure, absent the necessary showing of need. *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393–394, 91 L.Ed. at 462–463; *Nobles,* 422 U.S. at 237–238, 95 S.Ct. at 2169–2170, 45 L.Ed.2d at 152–154. As with the attorney-client privilege, a witness's identity is not necessarily protected by the work product doctrine. See Civ.R. 26(B)(1) and Staff Notes to Civ.R. 26.

■ Because the rules of privilege tend to exclude legally relevant evidence, these rules are not favored by the courts in the criminal context. *Herbert v. Lando* (1979), 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115, 133; see *In re Grand Jury Proceedings* (C.A.4, 1984), 727 F.2d 1352, 1355. As a result, evidentiary privileges are not absolute. *Rainone,* 32 F.3d at 1206. Even long-recognized privileges may be trumped by Sixth Amendment rights. *Dayton v. Turner* (1984), 14 Ohio App.3d 304, 305, 14 OBR 362, 362–363, 471 N.E.2d 162, 163, citing *United States v. Nixon* (1974), 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039, 1066–1067.

■ The right to the production of all evidence at a criminal trial has constitutional dimensions, whereas there is no explicit reference in the United States Constitution to any privilege of confidentiality. *Turner,* 14 Ohio App.3d at

305, 14 OBR at 363, 471 N.E.2d at 163; see *Nixon*, 418 U.S. at 711–713, 94 S.Ct. at 3109–3110, 41 L.Ed.2d at 1065–1067. The protections of the attorney-client privilege and the work product doctrine will yield to the right to confront witnesses when that right is violated by enforcing privilege. *Rainone*, 32 F.3d at 1206; *Jenkins v. Wainwright* (C.A.11, 1985), 763 F.2d 1390, 1392; *United States ex rel. Blackwell v. Franzen* (C.A.7, 1982), 688 F.2d 496, 500–501. The right to compulsory process will also outweigh privilege when enforcing privilege prejudices the right. *Romano*, 46 M.J. at 274.

Even though a party may meet the *prima facie* threshold warranting an *in camera* inspection, the showing of need that will overcome privilege is much higher. If the trial court determines that *in camera* review is necessary, and if this review demonstrates that a privilege is applicable, the trial court must then determine whether the party seeking disclosure has proven a need more important than the protections afforded by the privilege.

■ To compel disclosure of information protected by the attorney-client privilege, the party seeking disclosure must demonstrate that the information is "material" as set forth in *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, and refined in *Kyles v. Whitley* (1995), 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490:

"*Bagley*'s touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the * * * evidentiary suppression 'undermines confidence in the outcome of the trial * * *.'

" * * * *Bagley* materiality * * * is not a sufficiency of evidence test. * * * One does not show [materiality] by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.*, 514 U.S. at 434–435, 115 S.Ct. at 1566, 131 L.Ed.2d at 506.

■ The question must be whether the defendant's inability to compel disclosure creates a substantial danger of prejudice by depriving her of the ability to present evidence or to contest the evidence presented by the state. See *Blackwell*, 688 F.2d at 500. But where such information concerns a collateral matter, or where refusing to compel its disclosure will not hinder the defendant's rights, a court's refusal to compel disclosure of privileged information will not

infringe upon the Sixth Amendment. See *United States v. Coven* (C.A.2, 1981), 662 F.2d 162, 170–171; *Jenkins,* 763 F.2d at 1392–1393.

The showing required to overcome the protections of the work product doctrine is different from that required to override the attorney-client privilege. There are two types of work product, and the degree of protection afforded depends on which work product is applicable.

Ordinary fact or "unprivileged fact" work product, such as witness statements and underlying facts, receives lesser protection. *Antitrust Grand Jury* (C.A.6, 1986), 805 F.2d 155, 163. Written or oral information transmitted to the attorney and recorded as conveyed may be compelled upon a showing of good cause by the subpoenaing party. Civ.R. 26(B)(3); *Hickman,* 329 U.S. at 511–512, 67 S.Ct. at 394, 91 L.Ed. at 462–463. "Good cause," as set forth in Civ.R. 26(B)(3), requires a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship. *Upjohn Co.,* 449 U.S. at 400, 101 S.Ct. at 688, 66 L.Ed.2d at 598.

The other type of work product is "opinion work product," which reflects the attorney's mental impressions, opinions, conclusions, judgments, or legal theories. *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393, 91 L.Ed. at 462. Because opinion work product concerns the mental processes of the attorney, not discoverable fact, opinion work product receives near absolute protection. *Antitrust Grand Jury,* 805 F.2d at 164. Notes made by the attorney or his agents that record the witness's statement, but that also convey the impressions of the interviewer, are protected as opinion work product, because such notes reveal the attorney's or agent's thoughts. See *Upjohn Co.,* 449 U.S. at 399, 101 S.Ct. at 687, 66 L.Ed.2d at 597.

The trial court had to determine whether the proof offered by appellant supported her claim that an *in camera* hearing was necessary. If Handorf did convey to appellant's counsel that the sought-after witness existed, then appellant made the requisite *prima facie* showing needed to warrant *in camera* inspection. The trial court erred in not engaging in such an analysis.

At the pretrial hearing, appellant's counsel told the trial court that he had attempted to find the sought-after witness, but was unable to discover the witness. He stated that his belief that the witness existed was based upon conversations with Handorf, but Handorf had also refused to answer any questions on this subject. At this point, appellant had not offered sufficient proof to warrant any *in camera* review.

At the hearing on appellant's motion for a new trial, appellant's counsel informed the trial court that Handorf had recently confirmed to him that the

witness existed. The trial court failed to consider the import of this additional proof. The trial court should have determined whether such statements were accurate. If so, the trial court should have conducted an *in camera* review of the information possessed by Handorf.

The trial court based its refusal to hold an *in camera* hearing or compel disclosure of the witness's identity on the assumption that the attorney-client privilege or the work product doctrine may have been implicated. The trial court believed that these privileges were inviolate. As noted above, this was the wrong conclusion. If protected by a privilege, the issue is whether the information sought was so important to appellant's defense that not compelling its disclosure would prejudice her rights. To determine the import of the information, the trial court would be required to hold an *in camera* interview of Handorf.

Therefore, we must vacate the trial court's denial of appellant's motion for a new trial and remand the case for the trial court to again consider this issue. First, the trial court must judge whether appellant has offered sufficient proof to warrant an *in camera* review of Handorf concerning the allegedly privileged information. In this review, the trial court should first discover whether the sought-after witness, in fact, does exist. If so, the trial court must determine whether the information possessed by Handorf is protected by either or both of the asserted privileges.

If the information is not protected by a privilege, it must be disclosed. If the information is protected by a privilege, the trial court must decide, in accordance with the foregoing law, whether appellant has proven a need for the information that will overcome the applicable privilege. If appellant has made such a showing, the information must be disclosed, and the trial court must again consider whether appellant should be granted a new trial.

The *in camera* hearing with Handorf must be recorded so as to preserve any issues that may arise in the course of the hearing or in the trial court's decision. If the trial court determines that the information may not be disclosed, then the record of the hearing must be sealed by protective order and attached to the record to be reviewed by this court in closed proceedings should there be further appeals. This procedure ensures that, under such circumstances, this court will be able to adequately assess the information and determine whether the trial court's decision is within its broad discretion without breaching the protections of privilege.

Again, we note that this case is an unusual one, and we limit our decision to the specific facts as presented. Accordingly, appellant's first assignment of error is well taken.

Assignment of Error No. 4:

"The trial court erred to defendant's prejudice when it denied counsel's motions for a verdict of acquittal, and again when it accepted and journalized verdicts of guilty which were not supported by relevant and credible evidence."

In her final assignment of error, appellant contends that her conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. Based upon our disposition of appellant's first assignment of error, we find that the issues in this assignment of error are not ripe for review until the defect in the lower court is cured.

After the trial court holds the ordered hearing, the trial court may find that appellant may or may not be entitled to a new trial. As a result, there presently is no need to review the evidence presented at trial below. If the trial court finds that the information may not be compelled, and that appellant is not entitled to a new trial, then appellant may appeal that decision. We will then rule on the fourth assignment of error.

The judgment is affirmed in part, vacated in part, and the cause is remanded for proceedings not inconsistent with this opinion.

*Judgment affirmed in part,*
*vacated in part*
*and remanded.*

WALSH, J., concurs.

VALEN, J., concurs in part and dissents in part.

VALEN, J., concurring in part and dissenting in part.

I concur in the first, second and third assignments of error. I would rule upon the fourth assignment of error because this assignment of error is based upon the evidence presented at trial. The outcome of the first assignment of error will neither add to nor delete from the evidence and record that is now before us. Therefore, this assignment of error is ripe for decision.