OPINION
Defendant-appellant, Joy Major Hoop, appeals her guilty verdicts in the Brown County Court of Common Pleas for conspiracy and two counts of complicity in the commission of the aggravated murder of her husband, Donald Ray Hoop ("Donald").
Donald, aka "Whitey," was shot to death in the parking lot of Slammers Bar ("Slammers") in Mount Orab, Brown County, Ohio, in the early morning hours of February 10, 1997. Donald was shot once in the jaw and once in the forehead at close range. When police arrived on the scene, appellant, the co-owner of Slammers, was kneeling over Donald's body and crying. Police found Carl G. Lindsey in the bathroom of a residence across the street from the bar, washing himself, with his clothes soaking in bloody bath water. A handgun with blood consistent with Donald's blood was found on the floor of the bathroom and blood consistent with Donald's blood was found on Lindsey and in Lindsey's vehicle. Donald's empty wallet was found in the bathroom trashcan, and a large sum of money was found in Lindsey's wallet. Lindsey was convicted of aggravated murder and sentenced to death.
Appellant was indicted on four counts alleging her participation in the aggravated murder, with death penalty specifications. The jury returned a verdict of guilty on Count 1, conspiracy to commit aggravated murder; on Count 2, complicity to commit aggravated murder by soliciting or procuring; and on Count 3, complicity to commit aggravated murder by conspiring with another. The jury also found appellant guilty of specification 2, which was included in all three counts. Specification 2 stated that the aggravated murder was committed while committing or attempting to commit or fleeing immediately after committing or attempting to commit aggravated robbery, and that the offense of aggravated murder was committed with prior calculation and design.
The jury found appellant not guilty of Count 4 of the indictment. The trial court dismissed Count 1, finding that Count 1 and Count 3 were allied offenses of similar import. The trial court also merged Count 3 and Count 2 and sentenced appellant to a term of life imprisonment with parole eligibility after serving twenty-five years.
Appellant previously appealed her conviction to this court. State v.Hoop (1999), 134 Ohio App.3d 627. An assignment of error raised in appellant's first appeal challenged the failure of the trial court to order the production of what appellant believed to be exculpatory information. Before trial, appellant received information that Lindsey's investigator, Lawrence Handorf, may have talked to an individual who could place the murder weapon in Lindsey's possession days before the shooting. Testimony was presented at trial that appellant placed a gun on the bar in front of Lindsey on the night of the shooting. Appellant attempted to compel Lindsey's investigator to disclose the identity of the person who allegedly placed the murder weapon with Lindsey before the day of the shooting. The trial court had found that such information would be privileged or work product, and had refused to hold an incamera hearing to inquire further.
Upon considering this issue, we remanded the matter to the trial court to hold a hearing to determine if a factual basis existed to support a good faith belief by a reasonable person that an in camera review of a certain witness would reveal evidence establishing an applicable privilege or that the privilege was outweighed by other rights. After holding a hearing, the trial court ruled that an in camera review was not necessary and subsequently denied appellant's motion for a new trial, which was based on the alleged exculpatory evidence. Appellant appeals from the trial court's decision overruling her motion for a new trial and raises three additional assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN DENYING HER MOTION FOR PRODUCTION OF EXCULPATORY EVIDENCE, AND FOR A NEW TRIAL BASED ON THE DENIAL OF ACCESS TO THAT EVIDENCE AT HER ORIGINAL TRIAL.
Appellant argues that Handorf could not refuse to divulge the name of a non-party witness by asserting attorney-client privilege. Appellant also maintains that this information should not be withheld under the protection afforded to investigative work product because disclosure of such "work product" should have been compelled upon the showing of substantial need.
On the initial appeal, we remanded to the trial court to determine whether appellant offered sufficient proof to warrant an in camera review of the investigator concerning the allegedly privileged information. We stated that in this review, the trial court should first determine whether the sought-after witness existed. We further ordered that if the trial court determined that such a witness did exist, the trial court should hold an in camera hearing and determine if the information from the investigator was privileged or work product. The trial court then was to consider whether appellant's need for the information outweighed the privilege that protected this information from disclosure if the court found that the information was in fact privileged or work product.
At the hearing following our remand, the trial court took testimony from R. Scott Croswell, appellant's trial attorney, and from Handorf. Croswell testified to the reasons why he thought there was a witness who could exculpate appellant. Croswell stated that Handorf never told him that this witness existed. Croswell testified that he believed that if there were no such witness, Handorf would have told Croswell, as a professional courtesy, that such a witness did not exist. Handorf testified that he had made no statement or gesture to confirm or otherwise indicate to Croswell that Handorf knew about this exculpatory witness. The trial court, after taking the testimony of witnesses and hearing the arguments of counsel, ruled that an in camera hearing was not warranted and no further proceedings were required. Based on its ruling, the trial court denied appellant's motion for a new trial on the exculpatory evidence issue.
A ruling on a motion for a new trial rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's action was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
The trial court explicitly found that Handorf made no statement to Croswell to confirm or otherwise indicate the existence of a sought-after witness with exculpatory information. Accordingly, the trial court did not reach the issue of whether any information Handorf may have had was privileged or work product. As a result, we find that the trial court's decision concerning the exculpatory evidence and denying the motion for a new trial was not unreasonable, arbitrary, or unconscionable. The trial court did not abuse its discretion in deciding that there was no factual basis to support a good faith belief that an exculpatory witness existed and finding that an in camera review was not necessary. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY DENYING HER MOTION FOR NEW TRIAL WHEN THE INDICTMENT WAS FATALLY DEFECTIVE AS TO THE COUNTS CHARGING CONSPIRACY.
Appellant argues that Counts 1 and 3 of the indictment were defective because they did not allege an overt act by appellant in furtherance of the conspiracy.
Appellant contested the indictment in her previous appeal in an assignment of error regarding the trial court's failure to order the state to consolidate or elect among the counts of the indictment. This court addressed and overruled this assignment of error. Hoop,134 Ohio App.3d at 635-637. Appellant is now attempting to raise a new theory to contest the indictment on the remand to the trial court. This case was remanded to the trial court for the limited purpose of considering the allegedly exculpatory information and the motion for a new trial based on the exculpatory information. Id. at 643-644.
Pursuant to the doctrine of the law of the case, "a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." See e.g., Singleton v. Singleton (1994),95 Ohio App.3d 467, 470, citing Nolan v. Nolan (1984), 11 Ohio St.3d 1. Upon remand to the trial court following an appeal, the trial court is without authority to extend or vary the mandate given. Singleton at 471. The fact that there was an issue upon which we remanded, did not "serendipitously reopen all previously closed issues for presentation of new theories." Id.
This court specifically did not rule on the assignment of error from the previous appeal concerning the sufficiency and manifest weight of the evidence at trial, pending the trial court's decision on the allegedly exculpatory evidence. With the exception of that assignment of error, which appellant again raises in her fourth assignment of error in the instant appeal, the exculpatory evidence hearing was the only issue on remand and is the only other issue capable of further review by this court. Therefore, this court will not consider appellant's new legal challenges to the validity of the indictment at this time. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN PERMITTING COUNSEL FOR CO-DEFENDANT CARL LINDSEY TO INTERVENE IN THE HEARING ON DEFENDANT'S MOTION FOR NEW TRIAL, AND TO CROSS-EXAMINE WITNESSES AND MAKE LEGAL ARGUMENTS IN OPPOSITION TO DEFENDANT'S POSITION[.]
Appellant argues that Lindsey should not have been permitted to participate in the remand hearing to consider whether there should be anin camera review because Lindsey did not have a legal interest in the outcome of appellant's trial.
The trial court permitted Lindsey's attorney to cross-examine the witnesses and to provide argument in the remand hearing on the issue of exculpatory evidence. The trial court stated that it was permitting Lindsey to participate in the remand hearing because of Lindsey's interest in potential privilege/work product issues with respect to Lindsey's investigator. The trial court found that because no specific procedure was prescribed by the criminal rules, it would follow Crim.R. 57(B)[1] and utilize Civ.R. 24(A)(2).
Civ.R. 24(A) states: "Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." The trial court determined that Lindsey should participate in the remand hearing because he had an interest in the exculpatory evidence issues as they related to the potential in camera review of his investigator and possible privilege issues and that appellant or the state could not adequately protect his interest. Ohio courts have applied an abuse of discretion standard when reviewing Civ.R. 24(A) motions. State ex. rel. First New Shiloh BaptistChurch v. Meagher (1998), 82 Ohio St.3d 501, fn. 1; Myers v. Basobas
(1998), 129 Ohio App.3d 692, 696.
While we recognize that it is unusual to use a civil statute in a criminal context, Crim.R. 57 directs the trial court to the rules of civil procedure and applicable law for an issue such as this. We cannot say that the trial court's decision to permit Lindsey to question witnesses and provide argument in the remand hearing was unreasonable, arbitrary, or unconscionable. While the trial court never reached the issues of privilege or work product, neither appellant nor the state would have been able to adequately protect or express Lindsey's interest. Appellant's third assignment of error is overruled.
Assignment Error No. 4:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE WHEN IT DENIED COUNSEL'S MOTION FOR A VERDICT OF ACQUITTAL, AND AGAIN WHEN IT ACCEPTED AND JOURNALIZED VERDICTS OF GUILTY WHICH WERE NOT SUPPORTED BY RELEVANT AND CREDIBLE EVIDENCE.
Appellant argues that the state presented insufficient evidence at trial to convict her and that her motion for acquittal should have been granted. We also interpret appellant's assignment of error to assert that the guilty verdicts were against the manifest weight of the evidence.[2]
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. In reviewing a ruling on a Crim.R. 29(A) motion, this court construes the evidence in a light most favorable to the state. Id.
The three counts upon which appellant was found guilty were, respectively: conspiring with Lindsey to commit aggravated murder in violation of R.C. 2923.01(A)(1);[3] complicity in causing the death of another by purposely procuring or soliciting Lindsey to commit aggravated murder contrary to R.C. 2923.03(A)(1); and complicity in causing the death of another by conspiring with Lindsey to commit aggravated murder in violation of R.C. 2923.03(A)(3). All three counts stated that the death of another was caused while the offender was committing, attempting to commit, or fleeing immediately after the commission of an aggravated robbery, and that such offense was committed with prior calculation and design. R.C. 2929.04(A)(7).
The state presented evidence for the jury to find that Donald was murdered and that Lindsey had participated in Donald's death. The state further presented testimony from A.J. Cox, Kenny Swinford, and Kathy Kerr that appellant suggested killing Donald on the night of the murder. Kerr, Swinford, Lindsey, and appellant were grouped together at one end of the bar and Cox was sitting at the other end of the bar. The state also presented evidence from Cox that appellant talked on the phone to Donald on more than one occasion and said that "he was on his way to the bar" and that she wanted "him taken care of." Cox testified that appellant displayed a knife and said that it was one weapon to use, and asked if anyone had "a piece." Cox testified that appellant reached behind her at the bar and placed a covered object on the bar, stating that if the knife did not work, this could be used. Cox testified that the object made a metallic sound when appellant placed it on the bar.
Cox also stated that appellant said that Kathy Kerr's residence across the street from the bar could be used to "take care of things there" after it happened. Cox testified that appellant said that "if they was [sic] ever picked up that, uh, not to worry about anything because they was [sic] taken care of and that her mother would take care of them if nobody else could." Cox testified that on that evening, he was not sure whom appellant was discussing killing.
Kenny Swinford testified that appellant suggested making "it" look like a robbery and that appellant also stated that Donald "carried a bunch of money on him all of the time." Swinford testified that when appellant said "he was on his way," he assumed appellant was talking about Donald. Swinford said that appellant asked him to participate in the killing, and stated to Swinford that if he said anything, she would have him killed too. Swinford testified that Lindsey asked Swinford if he had a gun but did not ask him for it.
The state presented the testimony of Kathy Kerr, who stated that appellant told people in the bar on the night of the shooting that she "wanted Donald dead," and that Lindsey said "it's no problem." Kerr also testified that she saw appellant place in front of Lindsey a gun that looked like the weapon the state had presented as the murder weapon.[4]
Donald's eleven-year-old daughter testified that she visited with her father every other weekend and that she observed one handgun belonging to appellant in the house. She also testified that Donald possessed two handguns, one of which looked like the handgun presented as the murder weapon.
Testimony was also presented that while appellant was being transported to the police station after the shooting, she said, "I'm sorry this happened. I can't believe this happened." During questioning a month after the murder, appellant told police that after the shooting, she walked outside of the bar when she heard some noise and, "that's when I saw Whitey [Donald] and I knew we were in big trouble."
Two other witnesses were called by the state concerning events after the shooting. Tom Merriman testified that appellant took him aside at the bar some time after the shooting and asked him to convey to Lindsey that she still cared about him. Merriman testified that appellant also stated to him that Lindsey was involved in the murder of her husband and that appellant had paid him to kill Donald. Merriman further testified that appellant told him that a second gun was involved in the incident and that appellant had to "finish the job." Kent Gray testified that he was present and saw appellant take Merriman aside.
The state presented evidence that appellant stated that she wanted her husband dead, that she asked that he be killed, and that she offered and provided different means for accomplishing the murder. Appellant provided a reason or cover-up for the murder, suggesting a robbery since the victim always carried large sums of money, and even proposed that Kerr's residence be used as a refuge after the murder. Construing the evidence most favorably for the state, the jury could have found that the essential elements of the crimes of complicity and conspiracy to commit aggravated murder were proven beyond a reasonable doubt. The evidence was sufficient to allow a rational factfinder to conclude that the state had sustained its burden, and the trial court properly denied appellant's Crim.R. 29(A) motion.
Appellant also contends that the verdict is against the manifest weight of the evidence. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; In re Good (1997), 118 Ohio App.3d 371.
Appellant presented evidence that Swinford and Kerr, along with Lindsey and appellant, were drinking intoxicating beverages on the night of the murder. Swinford, Kerr, Cox, and Merriman all admitted to histories of substance use. Swinford and Kerr both testified that they thought that the discussion about killing Donald was a joke. Witnesses provided testimony that challenged the credibility of Kerr, and Kerr admitted that her grand jury testimony omitted any information about appellant providing Lindsey with a gun. Appellant also presented evidence that Lindsey had allegedly stolen money and drugs days before the shooting.
Marjorie Waits Williams testified that Lindsey appeared at her house and attempted to sell her a gun, tried to fight with a male who was present, and stole her tool box that contained drugs and money. Williams further testified that she glimpsed the handle of a small gun on Lindsey's person the evening of the theft and that it "kind of looked" like the alleged murder weapon. There was testimony that Lindsey did not like Donald because Donald had pressed criminal charges against one of Lindsey's friends months before, and that Lindsey did not like the way Donald cut the drugs Donald sold. Calvin DeHart testified that Lindsey was desperate for money to buy drugs because Lindsey was unemployed and had been discussing illegal ways to obtain money.
The jury had the benefit of seeing and hearing the witnesses testify and was in the best position to determine the facts of the case. In reGood at 377. Reviewing the record as presented by the state and appellant, and weighing the evidence and the reasonable inferences, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Therefore, the fourth assignment of error is overruled.
YOUNG, P.J., and POWELL, J., concur.
[1] Crim.R. 57(B) states: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists."
[2] This assignment of error was raised by appellant in her previous appeal, but was not ruled upon by this court, pending the outcome on remand.
[3] R.C. 2923.01(A)(1) states that, "No person, with purpose to commit or to promote or facilitate the commission of aggravated murder, murder, kidnapping * * * shall * * * with another person or persons, plan of aid in planning the commission of any of the specified offenses[.]
[4] A forensics expert testified that the spent bullets involved in the shooting were too mutilated to conclude that they came from the gun found in Kerr's bathroom and believed to be the murder weapon. The expert testified that the bullets were consistent in class characteristics as having been fired by the firearm in question.