JOURNAL ENTRY AND OPINION
para; 1 This is a consolidated appeal from a discovery order of Judge James J. Sweeney that required appellant Rockbestos-Suprenant Cable Corporation ("Rockbestos") to produce certain documents from the personal file of its former employee, George Littlehales. Rockbestos contends that the information is work product and/or opinion work product and, therefore, protected from disclosure. Because it appears some of the documents were not subject to an in camera review, we affirm in part, reverse in part and remand.
para; 2 These four cases are asbestos-related personal injury actions filed by appellees Oliver Jerome, Roger Levett, Maurice Kirksey and Willie Tellis ("Claimants,") against approximately eighty corporate defendants who had either manufactured or sold asbestos-containing products used at the Republic/LTV Steel facility in Cleveland, Ohio. Rockbestos manufactures cable and wire and supplied fire and moisture-retardant power cable, some of which contained an asbestos insulator, to both industrial customers and processors, but discontinued the use of asbestos sometime in the 1980's.
para; 3 From 1967 to 1995, Littlehales was employed by Rockbestos in varying capacities and retired as its quality assurance manager. Beginning in the late 1980's, he was the primary liaison between Rockbestos and its nationwide network of lawyers who defended the company in asbestos related personal injury lawsuits. He maintained a personal file containing the following documents described by the parties:
 ¶ 4 A. Correspondence from Littlehales to retained counsel regarding the various lawsuits;
 ¶ 5 B. Correspondence from counsel to Littlehales regarding same;
 ¶ 6 C. Mostly handwritten notes or compilations of data prepared by Littlehales to assist him in his role as litigation liaison; and,
 ¶ 7 D. Copies of selected historical business documents, such as product brochures, customer lists from prior years and other documents kept in the ordinary course of business.
¶ 8 The category C documents include fewer than one hundred handwritten notes or annotated, printed pre-existing records, which Littlehales claims he prepared at the request of Rockbestos' defense attorneys. The category D documents, roughly four thousand pages, are business record documents assembled for a variety of purposes by Littlehales. Copies of each category D document are interspersed within fifteen hundred boxes in three truck trailers known as the Rockbestos historical document repository. The repository is partially indexed and the boxes and documents are randomly placed in the repository, but each box may not contain a description of its contents.
¶ 9 Approximately one month before the Jerome trial, Littlehales in deposition revealed the existence of his personal file. When the Claimants demanded access to the file, Rockbestos refused on the grounds that the file contained privileged documents and protected work product and the Claimants moved to compel production. The parties eventually agreed that all communications between Littlehales and any lawyer (category A and B documents) were privileged and were exempt from the Claimants' motion.
¶ 10 On November 21, 2000, Judge Harry Hanna directed Rockbestos to submit the disputed documents to the court for an in camera review to determine which documents were protected by privilege. On November 28, 2000, Judge James J. Sweeney, filling in for Judge Hanna at a further hearing, stated he had spoken with Judge Hanna, was told about the trailers full of documents and that good cause had been shown for discovery of the category D documents. The category C documents were delivered for the judge's in camera review and, on December 28, 2000, the judge entered the order which stated, in summary:
 ¶ 11 * The motion to compel is denied as to Category A and B documents;
 ¶ 12 * The motion is granted as to category D documents, because although they purport to represent the select business records collected for purposes of Rockbestos litigation, they are also all available to Plaintiff as randomly dispersed in a large, unindexed document repository of some 1500 boxes of documents, establishing good cause for their production; and,
 ¶ 13 * That specific numbered documents from category C notes or memoranda prepared by Littlehales be turned over to Claimants, with the balance being afforded work product privilege and protected.
14. Rockbestos' first and third assignments of error state:
 ¶ 15 I. THE TRIAL COURT ERRED WHEN IT ORDERED DEFENDANT-APPELLANT TO PRODUCE DOCUMENTS CONTAINED WITHIN COMPANY LITIGATION FILES WHICH HAD BEEN SELECTED BY OR FOR ITS LEGAL COUNSEL IN THE COURSE OF THAT LITIGATION (CATEGORY "D" DOCUMENTS).
 ¶ 16 III. THE TRIAL COURT ERRED WHEN IT ORDERED DEFENDANT-APPELLANT TO PRODUCE NOTES WHICH HAD BEEN PREPARED BY ONE OF ITS EMPLOYEES REGARDING OR AS A RESULT OF CONVERSATIONS WITH ITS ATTORNEY IN THE COURSE OF LITIGATION (CATEGORY "C" DOCUMENTS).
¶ 17 Under Civ.R. 26(B)(3), "* * * a party may obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or that party's representative * * * only upon a showing of good cause therefor. * * *" The Federal analogue to this rule, as applied, resulted in the U.S. Supreme Court's pronouncement of the "work-product doctrine" as set forth in Hickman v.Taylor:[1]
 ¶ 18 [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
¶ 19 We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the * * * Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted. (Emphasis added.)[2]
¶ 20 Hickmanand its progeny recognize two different types of work product which are given different levels of protection. "Opinion work product," revealing the mental impressions, legal theories and conclusions of a lawyer or party involved in a case, is available to an opposing party only upon an exceptional showing of need, in rare and extraordinary circumstances, or when necessary to demonstrate that a lawyer or party has engaged in illegal conduct or fraud.[3]
¶ 21 Ordinary fact or "unprivileged fact" work product, such as witness statements and underlying facts, receives lesser protection.[4]
Written or oral information transmitted to the lawyer and recorded as conveyed may be compelled upon a showing of "good cause" by the subpoenaing party.[5] "Good cause," in Civ.R. 26(B)(3), requires a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship.[6]
State v. Hoop also held that a party requesting disclosure of "fact work-product" must demonstrate that its need for disclosure is more important than the protections afforded by the privilege.[7] Insofar as the forced disclosure of facts is concerned, * * * [t]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. * * * Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."[8]
¶ 22 "The existence of a Civ.R. 26(B)(1) `privilege' as well as Civ.R. 26(B)(3) `good cause' are discretionary determinations to be made by the trial court."[9] When considering pre-trial discovery, the results of an in camera review by a judge, and the judge's determinations of what is discoverable is evaluated by an appellate court under an abuse of discretion standard.[10] "An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable."[11]
"However, when applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial court are correct."[12] In order for there to be an abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."[13]
¶ 23 Rockbestos argued that the category C and D documents required to be turned over to Claimants constituted opinion work-product because they were assembled or prepared exclusively by Littlehales, as litigation liaison, at the express direction of its defense lawyers. This contention was supported by Littlehales' affidavit prepared after the judge indicated that the category D documents were not protected. During his deposition, however, Littlehales testified that his "personal file" was a mix of analyses prepared for lawyers, correspondence with lawyers and general correspondence with customers or end-users of Rockbestos cable about possible precautions to be taken with those containing asbestos. He also stated that the file contained tests and air-quality reports from Rockbestos' insurance carrier about the air-quality of the Rockbestos manufacturing facility and the inherent hazards in stripping the asbestos-containing cable for installation, in addition to a series of Rockbestos cable product brochures used over the years, information for answering customer inquiries and certain unspecified business records included at the request of defense lawyers. Rockbestos' argument for characterizing category C and D documents as exclusively opinion work-product, therefore, appears overly broad.
¶ 24 Alternatively, it contends that the mere assembly of the documents by Littlehales is opinion work-product because the collection itself reveals the mental impressions of Littlehales' defense strategy and that of the lawyers, at whose direction the file was assembled. In support of this argument, Rockbestos cites to James Julian, Inc. v.Raytheon Corp.[14] and Peterson v. Douglas County Bank and TrustCo.[15]
¶ 25 James Julian, Inc., however, stands for the proposition that work-product protections apply to a set of business records selected by a lawyer for review by witnesses testifying at deposition, because that organization and purpose undoubtably would tend to reveal what that lawyer would consider important for purposes of litigation.[16]Peterson acknowledges that the contents of business records in a claims file may be protected as work-product prepared in anticipation of litigation. We find neither case persuasive, however, because there is nothing within the disputed Littlehales documents, including the specified category C handwritten notes ordered disclosed, which can even arguably reveal the mental impressions of anyone participating in Rockbestos' litigation. The generic nature of past customer lists with annotations of products purchased (category C) and product brochures, printed customer lists/invoices, test results and informational correspondence prepared at the request of customers (category D) simply does not reflect any thought processes by Littlehales.
¶ 26 Rockbestos submits that, even if the to-be-disclosed parts of the Littlehales file are characterized as pure "fact work-product," the Claimants have not sufficiently demonstrated "good cause" for production, as Civ.R. 26(B)(3) mandates. All of the 4,000 category D documents or information are available for inspection in its historical document repository and, Rockbestos submits, although the Jerome lawsuit was pending for over three years, his lawyer did not attempt to examine the contents of the repository until the day before Littlehales's deposition, roughly a month before trial and looked through only five boxes. It is Rockbestos' contention that the Claimants have "lazy lawyers" who wish to have Rockbestos' lawyers assemble and provide discovery to them that they neglected to undertake. The Claimants counter that Rockbestos is attempting to intentionally frustrate the discovery process by making relevant documents basically undiscoverable in an ocean of irrelevant paper.
¶ 27 The order granting access to all the category D group of documents noted:
 ¶ 28 * * * this court finds that, because there is no indexing of the documents, relevant documents can be obtained only from a review of approximately 1500 boxes of documents in the Rockbestos Repository, good cause has been shown to permit this court to require the production of these documents.[17]
¶ 29 Given the discretion the Civil Rules invest in a judge to control discovery, and given the standard for production of such documents announced above, i.e., that Claimants show substantial need, that the information is important in the preparation of the their case, and that there is an inability or difficulty in obtaining the information without undue hardship, we cannot find an abuse of discretion. The first and third assignments of error have no merit.
 ¶ 30 II. THE TRIAL COURT ERRED WHEN IT ORDERED THE CATEGORY D DOCUMENTS TO BE PRODUCED WITHOUT AN IN CAMERA INSPECTION.
¶ 31 While the Claimants rely upon United States Supreme Court precedent for the proposition that an in camera review of allegedly privileged documents is discretionary,[18] the Ohio Supreme Court has held that, upon assertion of attorney-client privilege, a judge shall conduct an in camera review to determine whether such privilege applies.[19] This court has extended that ruling to include assertions of work-product privilege.[20]
¶ 32 While Judge Hanna ordered that category C and D documents be segregated from the Littlehales file and transferred to the court forin camera review, Judge Sweeney's statements at a later hearing indicated his understanding that Judge Hanna believed the category D documents were discoverable. Although it is clear that category C documents had been reviewed in camera, Rockbestos' affidavit averred that the category D documents had not been forwarded to the judge prior to the written December 28, 2000 order from which this appeal ensued. Although it is unclear whether that is the case from the text of the order, it seems likely, since we note that some category C printed customer lists have been excluded as protected, that the order required similar customer lists — covering different customers but otherwise indistinguishable in form — to be disclosed as category D documents.
¶ 33 Because of this apparent inconsistency, between what is privileged under category C but not under D, and the mandatory in camera
review of documents claimed to be protected by the work-product privilege, we remand this case for a full in camera review of the category D documents. Once those documents have been reviewed and found to be discoverable or protected, the court shall conduct proceedings not inconsistent with this opinion. This assignment of error has merit.
¶ 34 Judgment affirmed in part, reversed in part and remanded.
¶ 35 It is ordered that appellant and appellee share the costs herein taxed.
¶ 36 The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
¶ 37 A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J., AND COLLEEN CONWAY COONEY, J., CONCUR.
[1] (1946), 329 U.S. 495, 67 S.Ct. 385; 91 L.Ed. 451.
[2] Hickman v. Taylor (1946), 329 U.S. 495, 510-512; 67 S.Ct. 385
at 393-394.
[3] See Upjohn Co. v. United States (1981), 449 U.S. 383,101 S.Ct. 677; Baker v. General Motors Corp. (2000), 209 F.3d 1051; State v. Hoop
(1987), 134 Ohio App.3d 627, 731 N.E.2d 1177.
[4] Antitrust Grand Jury (C.A. 6, 1986), 805 F.2d 155, 163.
[5] Civ.R. 26(B)(3); Hickman (1946), 329 U.S. at 511-512,67 S.Ct. at 394.
[6] State v. Hoop (1987), 134 Ohio App.3d 627, 642; 731 N.E.2d 1177,1187, citing Uphohn Co. v. United States (1981), 449 U.S. 383,101 S.Ct. 677.
[7] (1987), 134 Ohio App.3d 627, 643, 731 N.E.2d 1177, 1187.
[8] Hickman (1946), 329 U.S. at 507, 67 S.Ct. at 392.
[9] State ex rel. Greater Cleveland Transit Authority v. Guzzo
(1983), 6 Ohio St.3d 270, 271, 452 N.E.2d 1314, 1315.
[10] Radovanic v. Cossler (2000), 140 Ohio App.3d 208, 213,746 N.E.2d 1184, 1188.
[11] Blakemore v. Blakemore, (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[12] Focke v. Focke (1992), 83 Ohio App.3d 552, 615 N.E.2d 327.
[13] State v. Jenkins (1984), 15 Ohio St.3d 164, 222,473 N.E.2d 264.
[14] (D.Del. 1982), 93 F.R.D. 138.
[15] (1992), 967 F.2d 1186.
[16] James Julian, Inc., 93 F.R.D. at 144.
[17] Order of Court, Dec. 28, 2000.
[18] United States v. Zolin (1986), 491 U.S. 554; 109 S.Ct. 2619.
[19] Peyko v. Frederick (1986), 25 Ohio St.3d 164, 495 N.E.2d 219, syllabus, paragraph 2.
[20] Stelma v. Juguilon (1992), 73 Ohio App.3d 377, 389, 597 N.E.2d 523,531.