GRACE, Appellant,

v.

MASTRUSERIO et al., Appellees.

[Cite as *Grace v. Mastruserio,* 182 Ohio App.3d 243, 2007-Ohio-3942.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060732.

Decided Aug. 3, 2007.

244

John J. Mueller, L.L.C., and John J. Mueller, for appellant.

Reminger & Reminger Co., L.P.A., Brian D. Goldwasser, and Joseph W. Borchelt, for appellees.

MARK P. PAINTER, Presiding Judge.

{¶ 1} The trial court ordered discovery of an attorney's entire case file, without reviewing the file in camera or holding an evidentiary hearing. We reverse.

{¶ 2} Plaintiff-appellant, Stephen A. Grace, sued defendants-appellees, Dominic J. Mastruserio and Dominic J. Mastruserio Co., L.P.A., for legal malpractice and breach of fiduciary duty arising from Mastruserio's previous representation of Stephen in a divorce proceeding against his former wife, Mary Grace.

{¶ 3} The following facts are not supported by the record but have been gleaned from the parties' briefs—which exemplifies the need to have an evidentiary hearing at which the facts can be developed. Stephen fired Mastruserio and replaced him with Edward H. Collins, who was to complete the remainder of the divorce. Stephen later hired John J. Mueller to sue Mastruserio for malpractice and breach of fiduciary duty. The parties' briefs allege that Mastruserio had wrongfully stipulated that the equity in the marital residence constituted marital property, and that the stipulation was negligent because Stephen had made the down payment on the property before the marriage with his own money.

{¶ 4} Mastruserio propounded to Stephen interrogatories and a request for production of documents, and Stephen's basic response was that the answers and documents requested were privileged materials and attorney work product.

{¶ 5} Mastruserio moved to compel discovery of the entire divorce case file, including successor-attorney Collins's case file. Without reviewing the materials or conducting an evidentiary hearing, the trial court issued a blanket order compelling discovery of the file in its entirety, and it is from that order that Stephen appeals. We reverse and remand with instructions that the trial court conduct an evidentiary hearing and review the case file in camera to decide what materials are, or are not, privileged.

## I. The Divorce

{¶ 6} In 2001, Stephen hired Mastruserio to represent him in his divorce from his previous wife, Mary. After property hearings, Stephen, through Mastruserio, stipulated certain facts. Specifically, it was stipulated that he and his wife had purchased the marital residence during the marriage, and that the equity in the marital residence constituted marital property for the purposes of asset division. Based on those stipulations, Stephen also agreed to share the net equity equally with Mary. The court divorced Stephen from Mary, awarded child support, and divided the property (including the residence) essentially in accord with the division in the magistrate's report. Neither Mary nor Stephen appealed that judgment.

{¶ 7} In 2004, Stephen, through Mastruserio, moved for relief from judgment under Civ.R. 60(B). The relief motion requested the court to modify the division of property to account for the $75,000 down payment on the marital residence that Stephen had made with individual, premarital assets, and to modify the decree as it related to certain personal property that Stephen claimed was inherited property. The motion also alleged that after the entry of the divorce decree, Mary had failed to transfer the inherited property to Stephen, as she had apparently agreed to do.

{¶ 8} The cursory overview of the foregoing facts is all that can be gathered from the record, given the generic nature of the pleadings, motions, and responses. We are unable to deduce from the record what specific facts were alleged to have amounted to malpractice and a breach of fiduciary duty. The record needs further development.

## II. The Malpractice Action

{¶ 9} After Mastruserio filed the Civ.R. 60(B) motion, Stephen terminated the attorney-client relationship and hired Edward Collins to represent him in further pursuing the motion. The court later denied Stephen's motion. The malpractice and breach-of-fiduciary-duty claims arose from Mastruserio's representation of Stephen in the divorce proceedings.

{¶ 10} After the suit was filed, Mastruserio served Stephen with interrogatories and requests for production. Stephen objected, arguing that the information requested was protected under either the attorney-client privilege or the work-product doctrine for attorneys.

{¶ 11} One of Mastruserio's interrogatories stated, "Please state the name, address, telephone number and social security number of the persons answering these interrogatories." Stephen provided his name and address. Stephen objected to disclosure of his social security number, answering that the number was confidential but that it would be disclosed with a court order limiting its use and protecting the confidentiality of the material. Stephen omitted his telephone number because "Mastruserio has records reflecting [Stephen]'s telephone number and if Mastruserio's counsel wanted to contact [Stephen], the law requires Mastruserio to do so through [Stephen]'s counsel."

{¶ 12} The parties made extrajudicial attempts to resolve the discovery dispute, but were unable to compromise. Mastruserio then moved to compel discovery of the requested materials, including the case file of his successor, Collins. The trial court, without conducting a hearing or undertaking an in camera review of the materials, granted Mastruserio's motion to compel discovery.

{¶ 13} We review the trial court's disposition of discovery issues under an abuse-of-discretion standard.[1]

### III. Attorney–Client Privilege

{¶ 14} Stephen asserts that attorney-client privilege may be waived only by the statutory means provided in R.C. 2317.02(A): waiver by the client's express consent or by his voluntary testimony on the same subject. Not so.

{¶ 15} We first distinguish between the testimonial attorney-client privilege embodied in R.C. 2317.02(A) and the common-law attorney-client privilege.

{¶ 16} R.C. 2317.02(A) expressly relates to testimonial privilege, precluding an *attorney* from *testifying* on issues covered by the attorney-client privilege: "The following persons shall not testify in certain respects: An attorney concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily testifies or is deemed by [R.C. 2151.421] to have waived any

---

1. *State ex rel. The V. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198.

testimonial privilege under this division, the attorney may be compelled to testify on the same subject." [2]

 {¶ 17} A plain reading of the statute clearly limits the statute's application to cases in which a party is seeking to compel testimony of an attorney for trial or at a deposition—as opposed to cases where a party is seeking to compel production of nontestimonial documents. As the express language of the statute indicates, the privilege is testimonial: "The *testimonial privilege* established under this division * * *." [3] In cases that are not covered under R.C. 2317.02, the common-law attorney-client privilege applies.[4]

 {¶ 18} The common-law attorney-client privilege is not a new concept; in fact, the privilege existed during the reign of Queen Elizabeth I.[5] The privilege operates "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." [6]

 {¶ 19} The common-law attorney-client privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." [7] The burden to show that testimony or documents are confidential or privileged is on the party seeking to exclude the material.[8]

 {¶ 20} The concurring opinion in *Jackson v. Greger* [9] correctly noted that the common-law attorney-client privilege affords a greater scope of privilege

2. R.C. 2317.02(A).

3. (Emphasis added.) See id.

4. See *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18.

5. See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331.

6. See *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584; *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 7.

7. See *Reed v. Baxter* (C.A.6, 1998), 134 F.3d 351, 355–356; *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 12.

8. See *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 6 OBR 324, 452 N.E.2d 1304.

9. *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487.

than does R.C. 2317.02: The common-law attorney-client privilege " ' "reaches far beyond a proscription against testimonial speech. The privilege protects against any dissemination of information obtained in the confidential relationship." ' " [10] The common-law attorney-client privilege protects against the disclosure of oral, written, and recorded information, unless the privilege is waived. At common law, a client may waive the attorney-client privilege either expressly or by conduct implying a waiver.[11]

{¶ 21} A client may impliedly waive the attorney-client privilege through affirmative acts. Ohio appellate courts have discussed and applied the tripartite test set forth in *Hearn v. Rhay* [12] in determining whether the attorney-client privilege has been impliedly waived.[13] Under *Hearn*, a party impliedly waives the attorney-client privilege if (1) the assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to its defense.[14] Where these three factors coexist, the party asserting the privilege has impliedly waived it through his or her own affirmative conduct.

{¶ 22} Recently, the Ohio Supreme Court, in *Jackson v. Greger*, refused to adopt a judicially created waiver and indirectly limited the means by which the attorney-client privilege may be waived to those enumerated in R.C. 2317.02(A)— by express consent or by voluntary testimony on the same subject.[15] But the *Jackson* court expressly limited its holding to the case that was under consider-

---

**10.** Id. at ¶ 25 (Lanzinger, J., concurring in judgment only), quoting *State ex rel. Leslie*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 26, quoting *Am. Motors Corp. v. Huffstutler* (1991), 61 Ohio St.3d 343, 348, 575 N.E.2d 116.

**11.** Id.

**12.** *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574, 581.

**13.** The Second, Third, Sixth, Seventh, Eighth, Tenth, and Twelfth Appellate Districts have discussed implied waiver. See, e.g., *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 332, 612 N.E.2d 442; *G. Rand Smith Co., L.P.A. v. Footbridge Capital, L.L.C.*, 3d Dist. No. 14–01–39, 2002-Ohio-2189, 2002 WL 987846; *McMahon v. Shumaker, Loop & Kendrick, L.L.P*, 162 Ohio App.3d 739, 2005-Ohio-4436, 834 N.E.2d 894; *Gialousis v. Eye Care Assoc.*, 7th Dist. No. 05–MA–163, 2007-Ohio-1120, 2007 WL 752160; *H & D Steel Serv., Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), 8th Dist. No. 72758, 1998 WL 413772; *Schottenstein, Zox & Dunn v. McKibben*, 10th Dist. No. 01AP–1384, 2002-Ohio-5075, 2002 WL 31122804; *Ward v. Graydon, Head & Ritchey*, 147 Ohio App.3d 325, 770 N.E.2d 613.

**14.** *Hearn*, supra note 12, 68 F.R.D. at 581.

**15.** *Jackson*, supra note 9, at ¶ 12.

ation: "In the instant case, * * * 'we decline to add a judicially created waiver to the statutorily created privilege.' "[16] The abbreviated language used by the *Jackson* court left the decision whether the common-law implied-waiver doctrine applies to a particular set of facts to the sound discretion of the courts. As we have noted, Ohio appellate districts have favored application of the *Hearn* test. And our reading of *Jackson* convinces us that the Ohio Supreme Court did not abrogate the common law, and that it sufficiently limited its holding to the facts of that case so that appellate districts may decide for themselves, on a case-by-case basis, whether the common-law doctrine of implied waiver as announced in *Hearn* is applicable.

{¶ 23} We are likewise convinced that R.C. 2317.02 does not abrogate the common-law implied-waiver doctrine because the statutory attorney-client privilege is a testimonial privilege: "R.C. 2317.02(A), by its very terms, is a mere testimonial privilege precluding an attorney from testifying about confidential communications."[17] The statute pertains to attorney testimony. And where the statute is not implicated, the common law applies. Strict application of R.C. 2317.02(A) to include nontestimonial production of documents and answers to interrogatories would be contrary to the express language of the statute.

{¶ 24} It is self-evident that assertions of attorney-client privilege will necessarily involve a multitude of factual scenarios and legal defenses; and categorical judicial application of the bright-line statutory waiver followed by *Jackson* obstructs the trial court's discretion in ruling on nontestimonial discovery matters, raises form over substance, is a clear misreading of the express language of R.C. 2317.02, and works an injustice on parties who are able to satisfy *Hearn*.

{¶ 25} In view of the nature of litigation, when nontestimonial evidence is sought to be compelled, the flexibility of the *Hearn* test provides a more just result than the rigid application of R.C. 2317.02(A) in determining whether the attorney-client privilege has been impliedly waived: In determining whether a communication by a client to an attorney should be privileged, " 'much ought to depend on the circumstances of each case.' "[18]

{¶ 26} Of course, R.C. 2317.02(A) continues to protect testimonial evidence, and consequently an attorney may be compelled to testify only when the client expressly consents or voluntarily testifies on the same subject. For

---

16. Id., quoting *State v. McDermott* (1995), 72 Ohio St.3d 570, 571, 651 N.E.2d 985.

17. *State ex rel. Leslie*, supra note 4, at ¶ 26.

18. *Lemley*, supra note 8, at 264, 6 OBR 324, 452 N.E.2d 1304, quoting 8 Wigmore, Evidence (5th Ed.) 609, Section 2313.

example, in *Smith v. Smith*,[19] we held that the trial court had incorrectly applied *Hearn*; but that case is easily distinguishable because there the attorney's testimony was sought to be compelled against a former client, a factual scenario that fit squarely within the ambit of R.C. 2317.02. Here, Mastruserio sought compelled discovery of the entire case file, not Collins's testimony, as prohibited by R.C. 2317.02(A).

{¶ 27} We hold that the implied-waiver exception to the attorney-client privilege announced in *Hearn* is relevant to records, documents, and communications unless R.C. 2317.02(A) applies—when the moving party is seeking to compel testimonial speech from an attorney—in which case a client may waive the privilege only expressly or by testifying on the issue. The common-law implied-waiver exception to the attorney-client privilege survives R.C. 2317.02 and *Jackson*.

### IV. Attorney–Work–Product Doctrine

{¶ 28} Stephen also argues that the entire case file was protected by the work-product doctrine applicable to attorneys. An attorney's work product consists of "documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative."[20] The discovery of attorney work product under Civ.R. 26(B)(3) requires a showing of good cause.[21] A showing of good cause entails demonstrating that the materials, or the information they contain, are relevant and otherwise unavailable. The work-product doctrine operates to prevent an attorney from "taking undue advantage of his adversary's industry or efforts."[22]

{¶ 29} The party against whom discovery of confidential materials is sought is entitled, for good cause shown, to an order protecting the party from annoyance, embarrassment, oppression, or undue burden or expense.[23] A trial court's decision granting or denying a protective order is subject to an abuse-of-discretion standard and will not be reversed on appeal absent an unreasonable, arbitrary, or unconscionable decision.[24]

---

19. *Smith v. Smith*, 1st Dist. No. C–050787, 2006-Ohio-6975, 2006 WL 3825144.

20. Civ.R. 26(B)(3).

21. Id.

22. Civ.R. 26(A).

23. Civ.R. 26(C).

24. *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957.

{¶ 30} The Eighth Appellate District in *Jerome v. A–Best Prod., Co.* [25] held:

{¶ 31} *"Hickman [v. Taylor* [26]*] and its progeny* recognize two different types of work product which are given different levels of protection. 'Opinion work product,' revealing the mental impressions, legal theories and conclusions of a lawyer or party involved in a case, is available to an opposing party only upon an exceptional showing of need, in rare and extraordinary circumstances, or when necessary to demonstrate that a lawyer or party has engaged in illegal conduct or fraud.

{¶ 32} " 'Ordinary fact' or 'unprivileged fact' work product, such as witness statements and underlying facts, receives lesser protection. Written or oral information transmitted to the lawyer and recorded as conveyed may be compelled upon a showing of 'good cause' by the subpoenaing party. 'Good cause,' in Civ.R. 26(B)(3), 'requires a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship.' *State v. Hoop* [27] also held that a party requesting disclosure of 'fact work-product' must demonstrate that its need for disclosure is more important than the protections afforded by the privilege. Insofar as the forced disclosure of facts is concerned, ' * * * [t]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. * * * Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.' " [28]

## V. More Is Required

{¶ 33} The trial court compelled discovery of an entire case file after reviewing only the motion to compel and Stephen's memorandum in opposition. No evidentiary hearing was conducted, and likewise no in camera review was undertaken. Rather, the trial court summarily compelled production of the entire case file.

---

25. *Jerome v. A–Best Prods. Co.* (Apr. 18, 2002), 8th Dist. Nos. 79139, 79140, 79141, and 79142, 2002 WL 664027.

26. *Hickman v. Taylor,* 329 U.S. 495, 510–512, 67 S.Ct. 385, 91 L.Ed. 451.

27. *State v. Hoop* (1999), 134 Ohio App.3d 627, 731 N.E.2d 1177.

28. (Citations omitted.) *Jerome,* supra note 25, at ¶ 20–21, quoting *Hoop,* supra note 27 at 642, 643, 731 N.E.2d 1177, and *Hickman v. Taylor,* supra note 26, at 507, 67 S.Ct. 385, 91 L.Ed. 451.

{¶ 34} The case file is not a part of the appellate record.

{¶ 35} Generally, discovery orders by a trial court are neither final nor appealable. But an order compelling production of material alleged to be protected by the attorney-client privilege gives rise to an interlocutory appeal.[29] In this case, the trial court compelled production of materials that Stephen alleged to be protected by the attorney-client privilege and by the work-product doctrine.

{¶ 36} But our review reveals that the record is insufficiently developed to determine whether compelling discovery of the case file violated the attorney-client privilege or the work-product doctrine. Some documents will undoubtedly be privileged or will be protected by the work-product doctrine, and conversely some will not. To distinguish between protected and unprotected materials, the trial court should have, at a minimum, conducted an evidentiary hearing or undertaken an in camera review of the case file. We again note the nonexistence of facts in the complaint. But the trial court is not left without options where a party refuses to disclose ordinary and unprivileged facts.

{¶ 37} The court may exercise its broad case-management discretion. For example, the court may grant a defendant's motion for a more definite statement.[30] The trial court may also order the plaintiff to reply to the defendant's answer.[31] And the pretrial procedures announced in Civ.R. 16 vest the trial court with power, enforceable by sanctions,[32] to manage pretrial proceedings through conferences and scheduling orders, through which the parties may discuss the following: the simplification of the issues,[33] the need to amend the pleadings,[34] the exchange of reports of expert witnesses expected to be called by the parties,[35] the possibility of obtaining admissions of fact,[36] and the admission into evidence of

---

29. *Miles–McClellan Constr. Co. v. Westerville City School Bd.*, 10th Dist. Nos. 05AP–1112, 05AP–1113, 05AP–1114, and 05AP–1115, 2006-Ohio-3439, 2006 WL 1817223, at ¶ 8.

30. Civ.R. 12(E); *Bell Atlantic Corp. v. Twombly* (2007), 550 U.S. 544, 594–596, 127 S.Ct. 1955, 1988, 167 L.Ed.2d 929 (Stevens, J., dissenting).

31. Civ.R. 7(A).

32. Civ.R. 16(8), 37, and 11.

33. Civ.R. 16(1).

34. Civ.R. 16(4).

35. Civ.R. 16(5).

36. Civ.R. 16(9)(a).

documents and exhibits that will avoid unnecessary proof.[37]

{¶ 38} The court may even order a party to submit an outline of deposition questions, limiting its scope to narrow and specific issues.[38] In fact, civil discovery rules explicitly state that the court may "make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[39] In sum, "[t]he court has the same if not greater right and duty to regulate discovery as it does to control the trial and to impose reasonable limits and conditions, consistent with the rules, to expedite the administration of justice."[40] But granting a motion to compel the entirety of an attorney case file without first hearing evidence or conducting an in camera inspection is beyond the trial court's discretion.

{¶ 39} A discovery order compelling disclosure of an attorney's entire case file "necessarily reveals the attorney's mental processes, thus invoking work-product protection," and consequently that file must be reviewed in camera, or an evidentiary hearing must be conducted to distinguish between discoverable and undiscoverable material.[41] Thus, granting Mastruserio's motion to compel production of an entire case file without a review or evidentiary hearing was an abuse of discretion.[42] The trial court was in no position to find, as it necessarily did, that the entire case file was protected neither by the attorney-client privilege nor by the work-product doctrine.

{¶ 40} When a party seeks to compel discovery of the entirety of an attorney case file, the trial court, using its broad discretion, is best suited to initially determine whether the evidence is discoverable or is protected under attorney-client privilege or the work-product doctrine, and for that determination to be a reasonable, informed, and conscionable one, the court must conduct an evidentiary hearing or perform an in camera inspection of the materials sought to be disclosed.

{¶ 41} As we have noted, Mastruserio's request to discover the entire attorney case file necessarily implicated an umbrella of protection under the attorney-

37. Civ.R. 16(9)(b).

38. *Provident Bank v. Spagnola*, 8th Dist. No. 86348, 2006-Ohio-566, 2006 WL 305452, ¶ 30; Civ.R. 26(C).

39. See Civ.R. 26(C); see also *Spagnola*, supra.

40. See *Penn Cent. Transp. Co. v. Armco Steel Corp.* (1971), 27 Ohio Misc. 76, 56 O.O.2d 295, 271 N.E.2d 877.

41. *Natl. Union Fire Ins. Co. v. Valdez* (Tex.1993), 863 S.W.2d 458, 460.

42. See, generally, *Miller v. Bassett*, 8th Dist. No. 86938, 2006-Ohio-3590, 2006 WL 1934788.

client privilege and the work-product doctrine. And under these circumstances, that alone required that the trial court, at a minimum, hold an evidentiary hearing or conduct an in camera review to determine the scope of the protection.

{¶ 42} We conclude that the trial court abused its discretion by compelling discovery of an entire case file without holding an evidentiary hearing or conducting an in camera review. We reverse the order compelling discovery and remand the case with directions for the trial court to conduct an evidentiary hearing or to undertake an in camera review of the attorney case file, and to decide which materials are protected, as well as which are unprotected, under the attorney-client privilege or the work-product doctrine.

Judgment reversed<br>and cause remanded.

SUNDERMANN and HENDON, JJ., concur.