[Cite as *Schiff v. Dickson*, 2013-Ohio-5253.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99719**

---

## MARVIN H. SCHIFF, ESQ.

PLAINTIFF-APPELLEE

vs.

## BLAKE A. DICKSON, ESQ., ET AL.

DEFENDANTS-APPELLANTS

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-701734

**BEFORE:** Celebrezze, P.J., E.A. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEYS FOR APPELLANTS**

Blake A. Dickson
Mark D. Tolles, II
The Dickson Firm, L.L.C.
Enterprise Place, Suite 420
3401 Enterprise Parkway
Beachwood, Ohio   44122

Rex H. Elliott
Cooper & Elliott, L.L.C.
2175 Riverside Drive
Columbus, Ohio   43221

**ATTORNEYS FOR APPELLEE**

Thomas A. Barni
Benjamin D. Carnahan
Dinn, Hochman & Potter, L.L.C.
5910 Landerbrook Drive
Suite 200
Cleveland, Ohio   44124

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellants, Blake A. Dickson, Esq., and the Dickson Law Firm L.L.C. (formerly Dickson & Campbell, L.L.C., and collectively "Dickson"), bring the instant appeal challenging the trial court's denial of their motion for sanctions made pursuant to R.C. 2323.51 against Marvin H. Schiff, Esq. Dickson argues that the court erred in denying their request to have Schiff turn over his trial counsel's file and denying the motion for sanctions without a hearing. After a thorough review of the record and case law, we affirm.

## I. Factual and Procedural History

{¶2} Schiff and Dickson were partners in a law firm they started, Schiff & Dickson, L.L.C. They operated the firm from 1998 through 2004. Their relationship became tumultuous, which led to Schiff's departure from the firm by agreement of the parties. On February 4, 2005, the parties signed a "Redemption Agreement" whereby some firm assets were split and its cases divided.

{¶3} Dickson continued the firm and retained most of the cases that were previously handled by Schiff & Dickson. Included in those cases were several clients allegedly harmed by the processing of microwave popcorn with additives that could cause lung damage. Once a significant defendant in these "popcorn cases" settled in 2006, in accordance with the Redemption Agreement, Dickson sent Schiff a check for each case. The amount was computed using Dickson's judgment about the hours spent on the case prior to Schiff's departure in relation to the total hours devoted. Dickson specified that

each payment was in full satisfaction of all claims by Schiff for these cases. Dickson also informed Schiff that future settlements by other defendants in these cases would not result in any payments being made to Schiff. Per the Redemption Agreement, Schiff sent a notice of dispute of the sums paid within 30 days and requested documentation and mediation. Schiff also crossed out Dickson's "paid in full" language on each check and wrote in a notation indicating partial payment. The next step in the Redemption Agreement called for the parties to work out the dispute. Dickson did not turn over any documents and mediation was not instigated.

{¶4} A significant time after talks between the parties deteriorated, Schiff filed suit on August 18, 2009, against Dickson and his new firm, Dickson & Campbell, L.L.C., and Dickson filed a counterclaim. The case wound through motions to dismiss, motions for summary judgment, and appellate review.

{¶5} Finally, on January 22, 2013, a jury trial began on Schiff's breach of contract claim. Trial lasted three days and resulted in a jury verdict in Dickson's favor. The court then imposed the costs of trial against Schiff. Following the verdict, Dickson filed a motion for sanctions and requested access to trial counsel's client file relating to Schiff's case. On March 25, 2013, the trial court denied Dickson's motion for sanctions and denied as moot the request for access to attorney files. Dickson then filed the present appeal assigning the following three assignments of error:

> I. The trial court erred in denying Defendants' motion to compel Plaintiff's Counsel's file, following the jury trial of this case, relative to Defendants' frivolous conduct claim against Plaintiff Marvin H. Schiff and his counsel.

II. The trial court erred in denying Defendants' motion for an award of court costs, reasonable attorney's fees and other reasonable expenses incurred in connection with defending this frivolous case, pursuant to O.R.C. § 2323.51.

III. The trial court erred in denying Defendants' motion for an award of court costs, reasonable attorney's fees and other reasonable expenses incurred in connection with defending this frivolous case, without first conducting a hearing.

## II. Law and Analysis

**{¶6}** Dickson's assignments of error will be addressed out of order.

## A. Motion for Costs

**{¶7}** In his second assignment of error, Dickson argues that the trial court erred in denying his R.C. 2323.51 motion for costs based on frivolous conduct.

**{¶8}** According to R.C. 2323.51(A)(2)(a), "frivolous conduct" means, in pertinent part, conduct of a party or counsel of record that satisfies any of the following:

i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶9} The standard of review under R.C. 2323.51 is a mixed question depending on the types of arguments raised. The Ninth District has noted,

> the initial decision of whether a party's conduct was frivolous requires a factual determination. This is particularly true if a court must determine if conduct "serves merely to harass or maliciously injure another party to the civil action." Section 2323.51(A)(2)(a). Under this prong of the definition of frivolous conduct, the trial judge has "the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved." Consequently, a finding that certain conduct was engaged in to harass or injure another party is entitled to substantial deference by a reviewing court.
>
> A determination, however, that conduct "is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law," requires a legal analysis. Section 2323.51(A)(2)(b). As such, whether conduct is "warranted under existing law or can be supported by [a] good faith argument for extension, modification, or reversal of existing law is a question of law, 'peculiarly within the competence of an appellate court.'"

(Citations omitted.) *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233, 661 N.E.2d 782 (9th Dist.1995). "In determining whether the claim itself is frivolous, the test is whether no reasonable lawyer would have brought the action in light of the existing law." *Hardin v. Naughton*, 8th Dist. Cuyahoga No. 99182, 2013-Ohio-2913, ¶ 17, citing *James Lumber Co. v. Nottrodt*, 8th Dist. Cuyahoga No. 97288, 2012-Ohio-1746, ¶ 25, citing *Orbit Elecs., Inc. v. Helm Instrument Co.*, 167 Ohio App.3d 301, 2006-Ohio-2317, 855 N.E.2d 91 (8th Dist.).

**i.   Harassment or Malicious Injury**

**{¶10}** Conduct that evidences an intent to harass or maliciously injure generally is a factual determination best suited for the trial court. Therefore, we give deference to the lower court's judgment regarding such issues. *Lable & Co.* at 233. The judge sat through trial, heard the evidence, Schiff's case, and the tactics used to prosecute it fully. The trial court found that Schiff's case was not brought to harass or maliciously injure. This decision is not an abuse of discretion, especially in light of the fact that Dickson's firm received a settlement from another defendant in the "popcorn cases" and flat out refused to provide any portion of the fees to Schiff, even though, under the Redemption Agreement, he was entitled to a portion of them. The triggering event for payments to Schiff was the removal of fees from the firm's client account ("IOLTA") to the firm's account, not as Dickson claimed in his letters, the termination of the entirety of the litigation. Dickson claims that the case was brought merely so that he would have to expend fees defending the litigation, but there are legitimate issues of dispute between the parties that were resolved in Dickson's favor at trial.

**{¶11}** Both parties created the situation that resulted in this lawsuit, and the trial court's determination that the suit was not brought to harass or maliciously injure was not an abuse of its discretion.

### ii. Warranted Under Existing Law and Factually Supported

**{¶12}** This case is a matter of contract interpretation and whether Schiff's reading of the contract and theory of the case at trial is reasonable. The payments made for the "popcorn cases" were based solely on Dickson's calculation based on records to which

Schiff did not have access. Schiff's theory at trial was that the act of signing up these clients resulted in significantly more value than other work done, and Dickson should have considered this under the totality-of-the-circumstances language used in Section 9(E) to calculate payment. Schiff's argument, distilled, is that, without him signing these clients, Dickson would not have these cases. Schiff claims the act of retaining this business entitles him to more than two to three percent of the fees received by Dickson. He also attempted to show that the addition of new lead, outside counsel experienced in this type of litigation meant that Dickson's firm did not participate a great deal in the litigation. Finally, Schiff argued that Dickson's refusal to pay any future portion of attorney fees to Schiff based on additional settlements from the same cases is a clear violation of the Redemption Agreement. Dickson refused to provide documentation about his calculations and refused to participate in mediation, requiring Schiff to bring this suit.

{¶13} In this case, Dickson calculated the fees owed to Schiff from several cases related to employee exposure to butter flavoring at a processing plant. Schiff testified that he signed several of these clients before leaving the firm. These cases eventually settled, earning the attorneys of record millions of dollars in fees, a portion of which was paid to Dickson's firm. Schiff sought access to information to determine if the calculations employed by Dickson were reasonable in calculating the portion of the fees that were earned prior to Schiff's departure. Schiff claims the act of signing the clients in these cases created much more value than the two to three percent that Dickson calculated.

This is not an obviously fallacious argument or one not supported by a reading of the Redemption Agreement. The agreement called for Dickson to calculate those fees using good faith and reasonable judgment based on the totality of the circumstances. Section 9(E) of the agreement states:

> [U]pon receipt by LLC of fees generated by the cases and client matters listed on Exhibit D attached hereto and incorporated herein ("Work in Process"), the lead attorney on such Work in Process shall determine and set forth in writing (the "Percentage Certificate") the percentage (the "Shared Percentage") of the total fee that was earned with respect to such Work in Process through the Closing Date considering the totality of the circumstances, using reasonable and good faith judgment. If no member of LLC does any work on Work in Process after the Closing Date, the Shared Percentage shall be 100%. LLC shall pay to Schiff an amount equal to one-half of the Shared Percentage of net fees. * * *.

This broad standard was rife for dispute and did in fact foster the instant litigation.

{¶14} Dickson has failed to show that there was no reasonable basis in the law for Schiff's reading of the Redemption Agreement or his argument about the value provided to the firm regarding these cases prior to dissolution. The act of signing those clients may have more value than conducting a deposition or other task related to the litigation. However, the Redemption Agreement set forth a method of calculation that the jury found

was observed by Dickson. Schiff may have been overreaching at trial, but that does not mean Schiff's arguments are frivolous.

{¶15} Dickson also claims that Schiff failed to abide by the dispute resolution procedure in the agreement, and in doing so breached it. Examining letters exchanged between the parties prior to trial, it was Dickson's interpretation of the Redemption Agreement that any claim for payment of fees must be objected to within 30 days. Schiff did send letters of objection to Dickson requesting mediation. The Redemption Agreement also sets forth such a procedure for disputing fees, but it does not include an exact time period within which a demand for mediation or arbitration must be brought.

{¶16} Section 14 of the agreement governs the resolution of disputes. Section 14(A) requires delivery of a notice contesting payments made pursuant to the agreement within 30 days of the receipt of such payment. Section 14(B) requires the paying party to contact the disputing party and make reasonable efforts to resolve the issue. Section 14(C) then sets forth that the parties "shall *promptly* initiate a voluntary, non-binding mediation * * *." (Emphasis added.) The other provisions contain generally short, 30-day time frames for action. However, the period within which to initiate mediation is not so limited. Therefore, a possible interpretation of this agreement could mean that Dickson breached the agreement when Schiff's attorney attempted to instigate mediation with Dickson and he refused. This comes down to how one interprets "promptly" in Section 14(C) of the agreement.

{¶17} Dickson also asserts that Schiff agreed to accept the proffered payments in each of those cases as a complete resolution of all fees in the respective case. Dickson claims that the defense of accord and satisfaction bars Schiff's claims.

{¶18} "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 231, 611 N.E.2d 794 (1993), citing *Air Van Lines, Inc. v. Buster*, 673 P.2d 774, 777, 42 A.L.R. 4th 1 (Alaska 1983). But this is an affirmative defense that must be shown by the debtor. *Id.*; *Fanous v. Ochs*, 8th Dist. Cuyahoga No. 98649, 2013-Ohio-1034, ¶ 24.

{¶19} The usual elements necessary for contract formation are required for a subsequent agreement discharging the debt. These four elements are "proper subject matter, competent parties, mutual assent, and consideration." *Warner Storage, Inc. v. Systemation, Inc.*, 64 Ohio App.3d 1, 4, 580 N.E.2d 490 (8th Dist.1989), citing *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes*, 7 Ohio St.3d 7, 8, 455 N.E.2d 489 (1983).

{¶20} Section 9(E) of the Redemption Agreement requires Dickson to make payments to Schiff on the same day fees are earned and removed from its IOLTA account. Dickson's letter placing conditions on the acceptance of fees would appear to violate the terms of the Redemption Agreement and constitute a new agreement. Schiff retained the funds sent by Dickson while maintaining a dispute about those sums.

Dickson claims he offered Schiff a larger percentage of a smaller recovery or a smaller percentage of a larger recovery, but not both. But this may have been a false choice. Schiff 's disagreement that this constituted a valid accord and satisfaction is not unreasonable or unsupported by existing law or a reasonable extension thereof. Schiff promptly sent a notice of dispute and attempted to refute Dickson's attachment of new terms to the payments he was already required to make. At least from Schiff 's point of view, this could indicate a lack of a meeting of the minds and a failure of consideration in the transaction. As explained earlier, the triggering event for payment was not the resolution of all litigation, but the entitlement of the firm to fees and its deposit of these fees into the firm's own account. Therefore, when one defendant settled and the case was still pending against other defendants, there may have been no valid reason for Schiff to accept Dickson's payment in lieu of all payments to which he was entitled under the agreement. While consideration can generally be found in a transaction, Dickson's accord and satisfaction argument is not so clearly correct that Schiff 's suit is obviously without merit.

## B. Failure to Hold a Hearing

{¶21} In this third assignment of error, Dickson argues the trial court was required to hold a hearing on the motion for costs. The trial court did not err in overruling Dickson's motion without a hearing.

{¶22} In cases where frivolous conduct is not apparent, it is within the trial court's discretion to hold a hearing. *Huddy v. Toledo Oxygen & Equip. Co.*, 6th Dist. Lucas No.

L-91-328, 1992 Ohio App. LEXIS 2390 (May 8, 1992) ("a hearing is not required where the court has sufficient knowledge of the circumstances for the denial of the requested relief and the hearing would be perfunctory, meaningless, or redundant"). Reversal of a decision denying sanctions pursuant to R.C. 2323.51 is only warranted where the decision is arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Such is the case where frivolous conduct is obvious on the record. Where such evidence exists, the trial court is required to hold a hearing on the motion. This court has held that,

> [a]lthough ordinarily a trial court does not have to hold a hearing if it denies a motion for attorney fees and costs under R.C. 2323.51 or Civ.R. 11, Ohio courts have recognized that a trial court abuses its discretion when it "arbitrarily" denies a request for attorney fees. *Turowski v. Johnson* (1990), 68 Ohio App.3d 704, 589 N.E.2d 462 [(9th Dist.)]; *Mitchell v. Western Reserve Area Agency on Aging*, 8th Dist. [Cuyahoga] Nos. 83837 and 83877, 2004-Ohio-4353, ¶ 27. *Compare Pisani v. Pisani* (1995), 101 Ohio App.3d 83, 654 N.E.2d 1355 [(8th Dist.)] (recognizing that a hearing is not required when the court determines, upon consideration of the motion and in its discretion, that the motion lacks merit). An arbitrary denial occurs when (1) the record clearly evidences frivolous conduct and (2) the trial court nonetheless denies a motion for attorney fees without holding a hearing. *Id*. Similarly, if an arguable basis exists for an award of sanctions under Civ.R. 11, a trial court must hold a hearing on the motion.

*Fitworks Holdings, L.L.C. v. Pitchford-El*, 8th Dist. Cuyahoga No. 88364, 2007-Ohio-2517, ¶ 14, citing *Capps v. Milhem*, 10th Dist. Franklin No. 03AP-251, 2003-Ohio-5212.

{¶23} The trial court heard the arguments Schiff raised at trial and concluded that the arguments were rational and not warranting sanction. There is no evidence on the face of the record that Schiff engaged in frivolous conduct.

## C. Access to Attorney-Client Files

**{¶24}** In the first assignment of error, Dickson argues that the trial court erred when it did not require Schiff to turn over trial counsel's files related to the case. The only reason given to the court for this invasion of the closely-guarded confidential relationship was that the record may contain information that would show the suit was brought for an improper purpose.

**{¶25}** The attorney-client relationship enjoys a special protected status at common law and by statute. R.C. 2317.02(A); *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18.

**{¶26}** R.C. 2317.02(A)(2) provides the circumstances under which the information sought by Dickson is discoverable:

> An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, *if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.*

(Emphasis added.)

**{¶27}** There are also several common law exceptions to the general rule, including those applicable here — the "Cooperation with Wrongdoing (Crime-Fraud) Exception" or the "Lack-of-Good-Faith Exception." *See Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533. The

work-product doctrine also provides a sphere of confidentiality in which attorneys may operate to develop their theories and strategies for a given case. *Id*. at ¶ 55. This doctrine is governed by Civ.R. 26(B)(3) and requires a showing of "good cause" before discovery may be allowed.

{¶28} In either case — attorney-client privileged materials or attorney work product — good cause must be shown by the party seeking discovery of those materials. For attorney-client privileged material in this case, good cause means a prima-facie showing of fraud, bad faith, or criminal misconduct (R.C. 2317.02(A)(2)); for work product, it means "a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship." *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 30 (1st Dist.).

{¶29} Dickson has failed to carry either burden. There are no substantial allegations of fraud or illegal conduct. There are allegations of misconduct that would implicate R.C. 2317.02(A). However, Dickson's broad, general allegations relating to misconduct are insufficient to make a prima-facie showing. His reliance on *Givaudan* is misplaced because that case involved a fee dispute between a law firm and its client.

> Ohio recognizes the common-law self-protection exception to the attorney-client privilege, which permits an attorney to testify concerning attorney-client communications where necessary to establish a claim for legal fees on behalf of the attorney or to defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client.

*Givaudan* at ¶ 48. In those instances, an attorney or client has particular interest in access to the case file to determine if fees were earned or appropriate, and the file is the only place where such evidence can be found. The evidence of proper billing is contained within the case file. That is not similar to a broad, unsubstantiated claim of need to hunt through the entire case file on the off-chance that it may contain evidence of improper motive to bring suit.

{¶30} Dickson maintains that "[t]he contents of Plaintiff's counsel's file are directly at issue, relative to whether Plaintiff Schiff and/or his counsel engaged in frivolous conduct in filing and prosecuting this case, pursuant to [R.C. 2323.51(A)(2)]." But, R.C. 2323.51

> applies an objective standard in determining frivolous conduct, as opposed to a subjective one. *State Farm Ins. Co. v. Peda*, 11th Dist. [Lake] No. 2004-L-082, 2005-Ohio-3405. The finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 289, 610 N.E.2d 1076 (9th Dist.1992).

*Hardin*, 8th Dist. Cuyahoga No. 99182, 2013-Ohio-2913, at ¶ 14.

{¶31} Because there is an objective standard applied in this case, Schiff 's knowledge or understanding is not "highly relevant" pursuant to Civ.R. 26(B)(3), as Dickson argues. Much of the case turned on questions of law related to contract interpretations, whether an accord and satisfaction had been reached, and whether a reasonable attorney would have brought the claims involved.

{¶32} Here, Dickson offers nothing more than the remote possibility that examination of the client file may lead to information supporting his motion for costs.

That is insufficient to invade the sanctity of the attorney-client relationship. The trial court did not abuse its discretion in denying Dickson's request to examine the attorney case file.

### III. Conclusion

**{¶33}** The denial of Dickson's motion for costs filed pursuant to R.C. 2323.51 was not an abuse of discretion where Schiff asserted a breach of contract cause of action supported by reasonable contract interpretation and actions by Dickson that may show a breach of the agreement. The trial court determined that the evidence adduced at a three-day trial demonstrated that there was no improper purpose to the suit and that legitimate arguments were raised and supported by facts and evidence admitted therein. The trial court was not required to hold a hearing in order to deny the motion. Finally, the trial court did not abuse its discretion when it denied Dickson's request to review Schiff's attorney's trial case file without limitation.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
PATRICIA A. BLACKMON, J., CONCUR